## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL NAHAS**, Individually and as Administrator of the **ESTATE of FAYE MCCOY**, Decedent, and on behalf of the Estate's sole beneficiary, **DSP Jr.,** Ms. McCoy's minor child,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF PITTSBURGH**, a Municipal Corporation, **OFFICER ZACARIAH NORMAN**, individually and in his official capacity, **OFFICER EMILY SHIELDS**, individually and in her official capacity, **OFFICER MICHAEL SOKOLOWSKI**, individually and in his official capacity, **ARTHUR JEFFREY, INC. aka ART'S TAVERN  a business entity**, **JANE DOE**, an individual, and **JOHN DOE**, an individual.<br><br>Defendants. | **Civil Action**<br><br>**No.:**<br><br>**COMPLAINT IN CIVIL ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

AND NOW comes the Plaintiff, Michael Nahas, individually and as Administrator of the Estate of Faye McCoy, Decedent, on behalf of the Estate's sole beneficiary, DSP Jr., by and through their undersigned counsel, Todd J. Hollis, Esquire, of  Todd J. Hollis Law Inc., who files the following Complaint in Civil Action to recover damages for injuries and death sustained following a traffic stop of the Decedent on January 27, 2024, during which the Defendants violated the Decedent's civil rights   under the United States Constitution and failed to provide her with necessary care, stating in support thereof as follows:

1. This action arises from the death of the Decedent Faye McCoy (hereinafter, Ms. McCoy) following the actions of the City of Pittsburgh police officers and Defendant Arthur Jeffrey, Inc.

2. In the very early morning hours of January 27, 2024, Ms. McCoy and her friend Ms. Nakila Crawford-Creighton  (hereinafter, "Ms. Crawford-Creighton") were driving across the West End Bridge in the City of Pittsburgh.

3. Although Ms. Crawford-Creighton was the driver, the vehicle was owned by Ms. McCoy who was the passenger during the events alleged in this Complaint.

4. Ms. Crawford-Creighton, while driving across the bridge, made a wrong turn and hit a barrier at the end of the bridge which made the vehicle inoperable.

5. One or more witnesses, out of concern for Ms. McCoy and Ms. Crawford-Creighton, contacted the City of Pittsburgh Police, who arrived shortly thereafter.

6. Upon arrival, the police suspected Ms. Crawford-Creighton of driving while impaired. Ms. Crawford-Creighton was arrested for impaired driving, the car was impounded, and the  police sent her passenger – Ms. McCoy – on her way on foot.

7. According to Defendant Officer Zacariah Norman's Affidavit of Probable Cause (Incident No. ASAP-832266/23012120, January 27, 2024, Page 3), "While Officers attempted to detain Ms. Crawford, Ms. McCoy started to walk over towards the officers. I instructed Ms. McCoy to return to the vehicle, which she did not comply. I then detained McCoy until officers were able to get Crawford into custody [sic]."

8. According to the Pittsburgh Bureau of Police's policy on arrests, when a person is arrested by Pittsburgh Police, "***If the person is released, police shall ensure that the person is released at a safe location and is not otherwise placed at risk as a result of the incident. If necessary, police should provide transportation for the released person to a safe location***." (Order No. 44-1, 2017, sec. 4.9.2).

9. It is believed and therefore averred that the area where Ms. McCoy was released had been identified as the most dangerous intersection in the County of Allegheny.

10. This area was relatively desolate, with poor lighting. Ms. McCoy was released on a winter evening, and she was not warmly dressed.

11. The responding Defendant police officers made no effort to ensure that Ms. McCoy had a ride, nor did they transport her to a place of safety. The Defendant officers simply watched her walk away in the cold night, scantily dressed, in an area of few buildings and speeding cars.

12. As she proceeded north across the West End Bridge, she was struck by a vehicle and catapulted over the side of the West End Bridge and died.

13. This is a civil rights action seeking damages for the violations by Defendants of Ms. McCoy's rights, privileges, and immunities under the United States Constitution and the Civil Rights Act of 1871, 42 U.S. C. §1983, and Pennsylvania common law.


## **PARTIES**

14. **Ms. Faye McCoy**, hereinafter, " **Ms. McCoy**" was, at the time of her death, a 44-year-old woman who resided in Pittsburgh, Pennsylvania.

15. Plaintiff, **Michael Nahas**, is the Administrator of the Estate of Ms. McCoy. Mr. Nahas is a resident of the City of Pittsburgh, Allegheny County.

16. Defendant, **City of Pittsburgh**, is a municipality in the Commonwealth of Pennsylvania, which, at all relevant times, employed Pittsburgh Police officers who committed and/or participated in the wrongful acts alleged herein and/or did nothing to prevent other Defendant officers' illegal acts.

17. Defendant **Officer Zacariah Norman** is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Norman was acting within the scope of his employment as such.

18. Defendant **Officer Emily Shields** is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Shields was acting within the scope of her employment as such.

19. Defendant **Officer Michael Sokolowski** is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Sokolowski was acting within the scope of his employment as such.

20. Defendant **Arthur Jeffrey, Inc. a.k.a Art's Tavern** is a restaurant, tavern, bar or other business located at 2852 Penn Avenue, Pittsburgh Pennsylvania which distributed liquor and/or malt beverages and/or other intoxicating beverages to Plaintiff's Decedent Faye McCoy in the City of Pittsburgh, Allegheny County on January 26 and 27, 2024.

21. Defendant **John Doe 1** is an individual driver who struck Ms. McCoy with his vehicle. The Plaintiff does not know the identity of John Doe (hereinafter, "Mr. Doe") but will amend the Complaint to add the name of this unknown Defendant when he obtains this information.

22. Defendant **Jane Doe 2** is an individual driver who struck Ms. McCoy with her vehicle. The Plaintiff does not know the identity of Jane Doe (hereinafter "Ms. Doe") but will amend the Complaint to add the name of this unknown Defendant when he obtains this information.

23. Defendants John Doe 1 and Jane Doe 2 are "unknown defendants" being the driver who struck the decedent prior to the time relevant to this Complaint and, as such, pursuant to Pa. Rule of Civil Procedure 205, John Doe 1 and Jane Doe 2 are named. Plaintiff has made all reasonable efforts to ascertain the name of Defendants John Doe 1 and Jane Doe 2.

## JURISDICTION AND VENUE

24. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§1983 and 1988 and Pennsylvania common law.

25. The jurisdiction of this Court is predicated upon 28 U.S.C. §§1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction. Upon information, and belief, all Defendants reside in Pennsylvania, and the amount in controversy exceeds fifty thousand dollars ($50,000.00), exclusive of interest and costs.

26. The acts complained of occurred in the Western District of Pennsylvania, and venue is lodged in this Court pursuant to 28 U.S.C. §1391(b).

## JURY DEMAND

27. Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

28. The facts and occurrences herein stated took place on or about January 26 and 27, 2024.

### Arthur Jeffrey, Inc.

29. On the dates set forth above, Ms. McCoy (44-year-old African- American woman) was a patron of the establishment owned and/or operated by Arthur Jeffrey, Inc. and was served alcohol and/or malt liquor and/or other intoxicating beverages when she was in a visibly intoxicated state.

30. While at the Defendant's tavern, Ms. McCoy consumed excessive amounts of alcoholic and/or malt beverages and was served such beverages at and beyond the point at which she was visibly intoxicated, thus rendering her incapable of making reasonable decisions regarding her own degree of intoxication and ability to safely protect herself.

31. After leaving Defendant's establishment, the decedent and her driver, Ms. Crawford-Creighton, traveled to Younger's Bar wherein she _was not_ served alcohol because she was visibly intoxicated.

32. After leaving that establishment, Ms. Crawford-Creighton (the driver) traveled across the West End Bridge in the City of Pittsburgh, with Ms. McCoy as her passenger.

33. Their path took them to the West End Circle.

34. The West End Circle in the City of Pittsburgh has been commonly understood to be a very complicated and dangerous intersection in the City of Pittsburgh, Allegheny County.

35. Six (6) roads converge to make up the West End Circle: West Carson Street heading to the South Side, West Carson Street heading toward McKees Rocks, the West End Bridge over the Ohio River, Steuben Street, South Main Street heading into the West End, and Sawmill Run Boulevard.

36. In navigating this complex road pattern, Ms. Crawford-Creighton at one point realized she was in the wrong lane and, while trying to re-adjust, ended up on a traffic island, with the wheels to her vehicle rendered inoperable.

37. The intersection is made even more tricky by a traffic circle, multiple lights, and shifting of lanes as vehicles make their way to their correct destination.

38. It is believed and therefore averred that passerby's saw the inoperable vehicle and believed that the two women were intoxicated and located in a dangerous area and contacted the City of Pittsburgh Police to assist them.

**<u>City of Pittsburgh Police</u>**

39. Defendant officers Norman, Shields, and Sokolowski arrived at the accident scene within minutes.

40. Defendant officer Norman is alleged to have smelled alcohol on the breath of both women.

41. Assessing the situation, the officers believed Ms. Crawford-Creighton was intoxicated.

42. They ultimately arrested Ms. Crawford-Creighton for impaired driving. She was placed in handcuffs and escorted to the police vehicle.

43. Additionally, the officers took possession of Ms. McCoy's vehicle and contacted a towing company to move it.

44. The officers recognized that Ms. McCoy was under the influence of alcohol.

45. The officers observed that Ms. McCoy was not dressed in warm winter wear clothing. Additionally, it was dark at that time of the day, and she was wearing dark clothing.

46. The officers should have recognized that because of the time – very late at night – and the temperature – it was a January evening – combined with the relatively desolate location and Ms. McCoy's alcohol consumption, that it would not be safe for her to leave the location by foot.

47. Proceeding on West Carson Street heading to the South Side, Ms. McCoy would have had to walk through a relatively desolate area, with the river and warehouses on one side, and just a few businesses on the other, including "Controversy," a men's club. This could have been an unsafe path to take, given the absence of any homes and the dearth of open businesses but for one that likely attracts unsavory patrons.

48. Proceeding on West Carson Street heading toward McKees Rocks, she would have been walking through a completely desolate area, with train tracks on both sides of the road, and no homes nor businesses for a significant distance.

49. Proceeding on Steuben street, she would have had to walk a few blocks uphill until she came to a sprinkling of homes and no businesses.

50. Proceeding on South Main street heading into the West End, she would have had to walk some distance that has no homes nor businesses until she finally reached the business district of West End.

51. Proceeding in the dark on Sawmill Run Boulevard, she would not have had any sidewalk available and would have faced traffic likely proceeding at a significant speed, as the roadway is most reasonably described as a "highway" at that point.

52. It is believed and therefore averred during the course of the interaction Ms. McCoy had with the Defendant officers, she was taken into custody.  She was later released from custody at the West End circle where the accident occurred.

53. Per City of Pittsburgh Police Policy:

   4.9.2, the Defendant officers had a duty to release Ms. McCoy to a safe place "*If the person is released, police shall ensure that the person is released at a safe location and is not otherwise placed at risk as a result of the incident. If necessary, police should provide transportation for the released person to a safe location*."

## Release From Custody

54. Ultimately, Ms. McCoy, a scantily dressed, intoxicated single woman, during the early morning hours of a cold dark day in January, was released by the Defendant officers and expected to fend for herself and navigate an area of the City of Pittsburgh that has been regarded as the "most dangerous intersection in Allegheny County".

55. Following her release from custody, Ms. McCoy proceeded on foot onto the West End Bridge and into the oncoming lane against the flow of traffic over the Ohio River.

56. While proceeding across the bridge, she was struck by a vehicle, driven by Defendant(s) John/Jane Doe, and she was thrown into the air and over the edge of the bridge.

57. She landed in a parking lot on concrete pavement beneath the bridge. The fall resulted in her death.

58. The motor vehicle accident was caused as a result of Decedent's high degree of intoxication resulting from Defendant Arthur Jeffrey, Inc. serving her alcoholic and/or malt beverages beyond the point of visible intoxication. The Tavern's negligence in overserving alcohol to Ms. McCoy was proximate to her death.

59. At all times relevant hereto, Decedent was under the influence of intoxicating beverages to a point at which she was unfit to safely care for herself.

60. As a direct and proximate cause of the Defendants' negligent conduct as set forth below, Ms. McCoy was caused to suffer serious bodily injuries, harm and death.

61. Additionally, the Defendant officers' deliberate indifference to Ms. McCoy's safety resulted in her death.

62. As a consequence of her death, Ms. McCoy and her family were deprived of the pleasures and enjoyment of life, liberty, and the pursuit of happiness.

## COUNT ONE

**42 U.S.C. § 1983: VIOLATION OF MS. MCCOY'S SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (AGAINST OFFICER ZACARIAH NORMAN, individually and in his official capacity, OFFICER EMILY SHIELDS, individually and in her official capacity, OFFICER MICHAEL SOKOLOWSKI, individually and in his official capacity)**

63. Plaintiff realleges each allegation contained in the preceding paragraphs as if set forth separately herein.

64. Under the Due Process Clause of the Fourteenth Amendment, an officer may be held liable for failing to protect an individual where the state has placed that individual in danger through its affirmative conduct.

65. The officers were aware of Ms. McCoy's intoxication and the potential for her to suffer harm because of her profoundly impaired faculties.

66. At the time of the collision, Ms. McCoy's blood alcohol concentration was 0.242%.

67. The officers observed that Ms. McCoy was wearing dark clothes, placing her at even higher risk while walking away along the roadway at night.

68. The officers observed that Ms. McCoy was <u>not suitably dressed for the weather.</u>

69. The West End Bridge, over which the Decedent was traversing upon after being abandoned by the Defendant officers, consists of two (2) lanes traveling north and two (2) lanes traveling south.

70. To reach the next commercial facility, the Decedent would have had to walk approximately great distances to the north or south in extremely dark conditions next to a roadway.

71. All of the Defendant officers knew or should have known that at the time they abandoned her after impounding the car in which she had been a passenger, there were no nearby open commercial establishments where Ms. McCoy could take refuge.

72. Ms. McCoy was struck just minutes after being released from the custody of the officers, demonstrating the danger inherent in the situation.

73. All officers should have recognized the relatively desolate and physically dangerous area in which they were abandoning Ms. McCoy to walk on foot.

74. All the Defendant officers knew or should have known that Ms. McCoy had no means other than to go on foot to leave the location after the police released her from custody.

75. By impounding Ms. McCoy's car and abandoning her, the Defendant officers caused Ms. McCoy harm that was foreseeable, given that she was visibly impaired by alcohol, that any reasonable officer should have or did recognize that she was impaired, that in her state of intoxication, she would be more likely to be injured or harmed if left unescorted than someone who was not inebriated, and that she was likely to encounter harm upon being left alone, to walk by foot alone in the West End Circle in the middle of a January night with no open businesses in sight and with traffic around her moving at a significant speed.

76. By impounding Ms. McCoy's car and failing to transport her to an indoor place of safety, such as the police station, her home, or a friend's home, while recognizing the dangers of abandoning her, the Defendant officers acted in willful disregard for the Decedent's safety and acted with a degree of culpability that shocks the conscience.

77. By impounding Ms. McCoy's car and failing to transport her to a place of safety, such as the police station, her home, or a friend's home, the Decedent became a foreseeable victim of the Defendant officers' acts. The officers separated Ms. McCoy from her friend, deprived her of the shelter of a vehicle, and abandoned her in an area which they knew vehicles were driving at significant speeds, there were no open businesses, and the convoluted road intersection created dangers to an intoxicated pedestrian.

78. By impounding Ms. McCoy's car and failing to transport her to a place of safety, such as the police station, her home, or a friend's home, the Defendant officers, who were state actors, affirmatively used their authority in a way that created a danger to Ms. McCoy and rendered her more vulnerable to danger than had the state not acted at all.

79. By voluntarily assuming responsibility for her protection when they arrested Ms. Crawford-Creighton and detained Ms. McCoy and impounded her vehicle, the officers affirmatively created a danger and increased the risk that Ms. McCoy might be injured when they later abandoned her.

80. The officers left Ms. McCoy in a situation that was more dangerous than the one in which they found her. The area in which the officers abandoned Ms. McCoy was exceedingly dangerous for a pedestrian.  The temperature, time of night, darkness, distance from any business establishments, the Decedent's dark clothing, the speeds of passing vehicles, and her intoxication made the roadway a place of great danger for her.

81. The Defendant officers *created or enhanced* a danger that deprived Ms. McCoy of her Fourteenth Amendment right to substantive due process.

82. As a result of the affirmative acts of the Defendant officers, the danger or risk of injury to Ms. McCoy was greatly increased.

83. The Defendant officers showed a disregard for Ms. McCoy's safety amounting to deliberate indifference.

84. The Defendant officers affirmatively placed Ms. McCoy in a position of danger and created or exposed her to a danger which she would not have otherwise faced.

85. Defendant officers, acting under color of state law, thus violated 42 U.S.C. § 1983 by depriving Ms. McCoy of her rights under the Fourteenth Amendment to the United States Constitution.

86. As a direct and proximate result of said violations, Ms. McCoy suffered the injuries, death and damages described above in an amount to be determined at trial.

**COUNT TWO**

**42 U.S.C. § 1983: MUNICIPAL LIABILITY**
**(AGAINST CITY OF PITTSBURGH)**

87. Plaintiff repeats, reiterates and realleges each allegation contained herein above with the same force and effect as if hereinafter set forth at length.

88. Defendant City of Pittsburgh has violated Ms. McCoy's rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourteenth Amendments to the U.S. Constitution, and laws of Pennsylvania.

89. Defendant, City of Pittsburgh, through its Police Department, owed a duty of care to Ms. McCoy to prevent the injuries she sustained and her death.

90. Upon information and belief, the Defendant officers were unfit and incompetent for their positions as police officers.

91. The City of Pittsburgh, through its Police Department, was knowing, reckless and deliberately indifferent in:

    a.  Failing to implement a policy requiring officers to offer assistance to intoxicated persons;

    b.  Failing to implement a policy requiring officers to ensure that passengers in vehicles that have been impounded because of impaired drivers have a safe means to get home;

    c.  Hiring incompetent individuals to serve on the police force;

    d.  Inadequately training its officers regarding appropriate assistance and treatment of intoxicated persons;

    e.  Inadequately training its officers to ensure that passengers in vehicles that have been impounded because of impaired drivers have a safe means to get home;

    f.  Inadequately supervising its officers regarding the appropriate conduct toward intoxicated individuals;

g.   Inadequately supervising its officers regarding the appropriate conduct toward passengers in vehicles that have been impounded because of impaired drivers;

h.   Inadequately disciplining officers who improperly interact with intoxicated individuals;

i.   Inadequately disciplining officers who improperly interact with passengers in vehicles that have been impounded because of impaired drivers;

j.   Inadequately monitoring its officers regarding their interactions with intoxicated individuals; and

k.   Inadequately monitoring its officers regarding their interactions with passengers in vehicles that have been impounded because of impaired drivers.

92. The above improper conduct and omissions demonstrate that the City of Pittsburgh, through its Police Department, acted with deliberate or reckless indifference and with a callous disregard, in an arbitrary and abusive manner so as to shock the conscience.

93. The above-listed deficiencies displayed by the City caused the Defendant Police officers' deliberate indifference to Ms. McCoy's intoxication and need for assistance in reaching home or, at a minimum, a safe place.

94. The City's failings, as listed above, directly, and proximately caused Ms. McCoy's death.

95. Consequently, Ms. McCoy's right to substantive due process and her liberty interest in personal security guaranteed by the Fourteenth Amendment were violated by the City.

96. As a direct and proximate result of said violation, Ms. McCoy suffered the injuries, death and damages described above in an amount to be determined at trial.

**COUNT THREE**

**WRONGFUL DEATH UNDER PENNSYLVANIA COMMON LAW
(AGAINST ALL DEFENDANTS)**

97. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

98. The Defendants, acting within the scope of their employment, caused and/or contributed to the death of Ms. McCoy, by their deliberate indifference to her medical needs and the provision of alcoholic beverages to the decedent to the point where she was visibly intoxicated and unable to make reasonable decisions to care for herself.

99. The City and its officers were deliberately indifferent to Ms. McCoy's impaired condition when after taking her into custody they abandoned her at or near the West End Circle in the middle of the night in January, when she was not dressed for the weather and was miles from home and where there were no open businesses within close walking distance, and she was faced with walking in an unsafe area for pedestrians.

100. The Defendants Arthur Jeffrey, Inc. and the City of Pittsburgh officers' conduct was outrageous and shocks the conscience.

101. Defendants Arthur Jeffrey, Inc., the City of Pittsburgh and its officers are responsible for its employees' actions taken in the scope of their employment as employees and police officers.

102. As a direct and proximate result of said violation, Ms. McCoy suffered the injuries, death and damages described above in an amount to be determined at trial.


### COUNT FOUR

### NEGLIGENT  INFLICTION OF EMOTIONAL DISTRESS
### *(AGAINST* OFFICERS NORMAN, SHIELDS, AND SOKOLOWSKI, AND THE CITY OF PITTSBURGH*)*

103. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

104. As a result of Defendants' actions Ms. McCoy suffered extreme and severe emotional distress before her death.

105. Defendant Officers knew that such distress was substantially certain to result from their conduct or, at a minimum, acted in disregard of a substantial probability of causing severe emotional distress.

106. The Defendant officers acted outrageously by abandoning her near the West End Circle in the middle of the night in January, when she was not dressed for the weather and was miles from home and where there were no open businesses within close walking distance, and she was faced with walking in an unsafe area for pedestrians.

107. Defendant City of Pittsburgh is responsible for its employees' actions taken in the scope of their employment as employees and police officers.

108. As a direct and proximate result of said violation, Ms. McCoy suffered the injuries, death and damages described above in an amount to be determined at trial.

### COUNT FIVE

### DRAM SHOP
### (AGAINST ARTHUR JEFFREY, INC. )

109. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though they were fully set forth at length.

110. Defendant Arthur Jeffrey, Inc., upon information and belief, is a business entity or individual licensed and doing business within the Commonwealth of Pennsylvania.

111. At all times relevant hereto, Defendant Arthur Jeffrey, Inc. was engaged in business activities in the Commonwealth of Pennsylvania, including but not limited to the operation of a dram shop.

112. At all times relevant hereto, Defendant's bar/restaurant/amusement facility was open to and used by guests and business invitees such as the Decedent.

113. Defendant was in possession of a liquor license issued by the Commonwealth of Pennsylvania.

114. At times relevant hereto, Defendant:

    a.  Managed, maintained and controlled the referenced business establishment;

    b.  Exercised control over the agents, employees, officers, staff, administrators, representatives, servants and security personnel at the business;

    c.  Exercised control over the procedures that the agents, employees, officers, staff, administrators, representatives, servants and security personnel had the obligation to perform; and

    d.   Determined the qualifications or lack of qualifications of the agents, employees, officers, staff, administrators, representatives, servants and security personnel, including but not limited to those it devised.

115. Prior to the subject accident, the Decedent had been a patron at Defendant's establishment and did consume excessive amounts of alcoholic and/or malt beverages, which were served to her by the agents, servants, workmen and/or employees of Defendant's while she was in a visibly intoxicated state.

116. In the hours prior to the aforesaid motor vehicle accident, Defendant's establishment, by and through its agents, servants, workmen or employees, did serve intoxicating liquor or malt substances to Ms. McCoy, and negligently continued to serve her while she was visibly intoxicated, in violation of Pennsylvania law, including but not limited to the Liquor Code, 57 P.S. §4-492, et seq.

117. At the aforesaid time, Defendant, by and through its agents, servants, workmen or employees, did willfully and unlawfully serve, continue to serve, and/or make available alcohol, liquor, malt and brewed beverages to Decedent after it knew or reasonably should have known that Decedent constituted a risk of harm to herself and others by virtue of being intoxicated and inebriated.

118. As a consequence of Defendant's statutory violations and negligence as stated, the Decedent was involved in a serious motor vehicle accident causing the death of Decedent.

119. Defendant, by and through its agents, servants, workmen and employees, violated the statutes of the Commonwealth of Pennsylvania and was negligent in the following regards:

    a.   Selling, serving and/or making available to Decedent alcohol, liquor, malt and/or brewed beverages, causing her to become visibly intoxicated;

    b.   Selling, serving and/or making available to Decedent alcohol, liquor, malt and/or brewed beverages, when they knew or should have known that the Decedent might cause injury to herself and others as a result of being in an intoxicated condition;

    c.   Failing to detect that the Decedent was in a visibly intoxicated and inebriated condition as a result of Defendants continually serving alcoholic beverages to her;

    d.  Violating the statutes and laws of the Commonwealth of Pennsylvania, with respect to the service of alcohol and malt beverages;

    e.  Failing to have a drink cutoff limit for alcohol;

    f.  Allowing Decedent to leave the establishment after she became intoxicated;

    g.  Failing to act with reasonable care under the circumstances;

    h.  Continuing to serve alcohol or malt beverage to Decedent when she was visibly intoxicated; and

    i.  Failing to train, supervise and monitor their employees and agents who served alcohol and or malt beverage to the Decedent.

120. As a result of Defendant's negligent, reckless, malicious and wanton conduct and the resultant motor vehicle accident, Decedent suffered severe bodily injuries, which included, but were not limited to:

    a.  Trauma to the body;
    b.  Severe lacerations;
    c.  Disfigurement about the body;
    d.  Traumatic head injury; and
    e.  Multiple traumatic injuries leading to her death.

121. Prior to her death, Decedent, for some period of time, had an awareness of her impending death and otherwise suffered conscious and aware pain, suffering, aggravation and inconvenience, anxiety and loss of pleasure of life.

122. Defendant's actions as aforesaid were conducted willfully, wantonly, and with reckless disregard for the rights and safety of Decedent.

### COUNT SIX

### *SURVIVAL ACTION* UNDER PENNSYLVANIA COMMON LAW *(AGAINST ALL DEFENDANTS)*

123. Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as though fully set forth at length.

124. Plaintiff brings this action on behalf of the Estate of Faye McCoy, deceased, under 42 Pa C.S. §8302 and 20Pa. C.S. §3371 and claims all benefits of the Survival Act on behalf of herself and all other persons entitled to recover under the law.

125. On behalf of the Estate of Faye McCoy, deceased, Plaintiff claims all damages suffered by the Estate by reason of Decedent's death, including but not limited to anxiety, fear, pain, suffering, conscious awareness, impending death, aggravation, inconvenience, medical expenses sustained by Decedent prior to her death including any and all other damages recoverable under the Pennsylvania Survival Statute.

## COUNT SEVEN

## NEGLIGENCE
## (AGAINST ARTHUR JEFFREY, INC. )

126. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though they were fully set forth at length.

127. The negligence, recklessness, and carelessness of the Defendant consisted of the following:

   a. Selling, serving and/or making available to Decedent alcohol, liquor, malt and/or brewed beverages, causing her to become visibly intoxicated when it knew or should have known that Decedent might cause injury to herself and others as a result of being in an intoxicated condition;

   b. Failing to adequately train, supervise or manage its employer or employees who served alcohol or malt beverages to the Decedent;

   c. Failing to adopt or enforce policies and procedures and protocols regarding the service of alcohol to patrons who are visibly intoxicated; and

   d. Violating the liquor laws of the Commonwealth of Pennsylvania, with respect to the management and operation service of a dram shop.

128. As a result of Defendant's negligent and reckless conduct, Decedent suffered severe bodily injuries, which included, but were not limited to:

    a. Trauma to the body;
    b. Severe lacerations;
    c. Disfigurement about the body;
    d. Traumatic head injury; and
    e. Multiple traumatic injuries leading to death.

129. Upon information and belief, the Defendants' deliberate indifference to the serious medical needs of the Decedent and failure to provide safety to her proximately caused her injuries, pain, suffering, and death, for which the Defendants must pay damages.

130. Defendant's actions as aforesaid were conducted willfully, wantonly, and with reckless disregard for the rights and safety of Decedent.

WHEREFORE, Plaintiff respectfully requests judgment against all Defendants as follows:

(A) An order declaring that Municipal Defendants' conduct violated Ms. McCoy's rights as guaranteed by the Fourteenth Amendment to the United States Constitution;

(B) An order granting compensatory damages in an amount to be determined at trial;

(C) An order awarding punitive damages and costs against the individual Defendants (not to include the City) in an amount to be determined at trial;

(D) An order awarding Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988, as well as any other relief that this Court finds appropriate and based on the evidence at trial.

**JURY TRIAL DEMANDED**.

TODD J. HOLLIS LAW

By:/s/ Todd J. Hollis_____
Todd J. Hollis, Esquire
Supreme Court I.D. No. 72510
202 Penn Plaza
Turtle Creek, Pennsylvania 15145
412.515.4483 Phone
412.646.5748 Facsimile
toddjhollis@gmail.com
Counsel for the Plaintiff:
**Michael Nahas**, Individually and as
Administrator of the Estate of Faye McCoy,
Decedent, and on behalf of the Estate's sole

Beneficiary, DSP Jr., Ms. McCoy's minor child.

Date:  September 2, 2024.