IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL NAHAS, *Individually and as Administrator of the Estate of Faye McCoy, and on behalf of the Estate's sole beneficiary*,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER ZACARIAH NORMAN, OFFICER EMILY SHIELDS, OFFICER MICHAEL SOKOLOWSKI, ARTHUR JEFFREY, INC., JANE DOE, JOHN DOE,<br><br>Defendants. | 2:24-CV-01252-CCW |

**OPINION AND ORDER**

Before the Court are a Motion to Dismiss filed by Defendants Zacariah Norman, Emily Shields, and Michael Sokolowski (the "Officers"), ECF No. 23, and a Motion to Dismiss filed by Defendant Art's Tavern, ECF No. 21.  For the reasons set forth below, the Court will grant the Officers' Motion and deny as moot the Tavern's Motion.

**I.**     **Factual Background**

This case arises from the death of Faye McCoy after an interaction with City of Pittsburgh police officers.  The relevant factual allegations, taken as true, are as follows.

On the evening of January 26, 2024, Ms. McCoy and her friend, Nakila Crawford-Creighton, drank alcoholic beverages together at Art's Tavern, an establishment operated by Defendant Arthur Jeffrey, Inc.  ECF No. 1 ¶¶ 20, 28, 29.  Throughout the evening, Art's Tavern continued to serve Ms. McCoy "excessive amounts" of alcohol even though "she was visibly intoxicated."  *Id.* ¶ 30.  Ms. McCoy and Ms. Crawford-Creighton eventually left Art's Tavern and went to another bar where they were refused service due to their visibly intoxicated state.  *Id.* ¶ 31.

In the early morning hours of January 27, 2024, both women left the second establishment, and entered Ms. McCoy's car. *Id.* ¶¶ 2, 3, 32. Ms. Crawford-Creighton drove Ms. McCoy through Pittsburgh and eventually crossed the West End Bridge. *Id.* ¶¶ 3, 32–35. This bridge leads to a "very complicated and dangerous intersection" containing a traffic circle, multiple lights, shifting lanes of traffic, and the convergence of six different roads. *Id.* In attempting to navigate this intersection, Ms. Crawford-Creighton crashed the vehicle into a traffic island, rendering the car inoperable. *Id.* ¶ 36. A passerby apparently saw the accident, and the two intoxicated women, and contacted the City of Pittsburgh police. *Id.* ¶ 38.

Three City of Pittsburgh police officers arrived at the scene, including Defendants Zacariah Norman, Emily Shields, and Michael Sokolowski. *Id.* ¶ 39. The Officers suspected Ms. Crawford-Creighton of driving while impaired and attempted to detain her. *Id.* ¶¶ 6, 7. While attempting to detain Ms. Crawford-Creighton, Ms. McCoy started to walk over to the Officers. *Id.* Although the Officers instructed her to return to the vehicle, Ms. McCoy did not comply. *Id.* The Officers then detained Ms. McCoy until they were able to take Ms. Crawford-Creighton into custody. *Id.* The officers then arrested Ms. Crawford-Creighton for driving while impaired and contacted a towing company to remove the vehicle. *Id.* ¶¶ 42, 43. Although the Officers recognized that Ms. McCoy was intoxicated, inappropriately dressed for the winter weather, and without a vehicle, they left her alone at night in the intersection. *Id.* ¶¶ 44–46, 54. Minutes after the Officers left, Ms. McCoy walked into oncoming traffic on the West End Bridge, and a vehicle driven by Defendant(s) John/Jane Doe hit and killed her. *Id.* ¶¶ 56, 57.

On September 4, 2024, Michael Nahas, the administrator of Ms. McCoy's Estate, filed a Complaint against the Officers, the Tavern, and the Doe Drivers, alleging a 42 U.S.C. § 1983 claim for violation of substantive due process rights under the Fourteenth Amendment against the

Officers in their individual and official capacities as well as violations of state law against all Defendants.[1]  ECF No. 1.  The Officers and the Tavern have moved to dismiss the claims against them.  ECF Nos. 21, 23.  The Motions are fully briefed and ripe for resolution.[2]  ECF Nos. 21–24, 31, 32, 35.

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

---

[1] Mr. Nahas originally brought a municipal liability claim under 42 U.S.C. § 1983 against the City of Pittsburgh (Count 2), ECF No. 1 at 11, but based on the parties' voluntary dismissal, the Court has dismissed this claim and the City of Pittsburgh as a party, ECF Nos. 27, 28.

[2] The Court has federal question jurisdiction under 28 U.S.C. § 1331 over the Section 1983 substantive due process claim, which is the sole remaining federal claim. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

### III.     Legal Analysis

In his Complaint, Mr. Nahas alleges a single federal claim: that the Officers violated Ms. McCoy's Fourteenth Amendment substantive due process rights, under 42 U.S.C. § 1983 (Count 1). ECF No. 1 at 8–11. The remaining claims arise under Pennsylvania state law and include a wrongful death claim against all Defendants (Count 3); a negligent infliction of emotional distress claim against the Officers (Count 4); a claim under the Pennsylvania Dram Shop Act, 47 P.S. § 4-493(1), against the Tavern (Count 5); a survival action claim under 42 Pa. C.S. § 8302 and 20 Pa. C.S. § 3371 against all Defendants (Count 6); and a negligence claim against the Tavern (Count 7). ECF No. 1. The Court will address the federal claim first and then turn to the remaining state-law claims.

### A. Section 1983 Framework

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor." *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

Here, the parties do not dispute that the Officers are state actors for purposes of § 1983. *See generally* ECF Nos. 24, 32 (disputing whether the Officers violated Ms. McCoy's constitutional rights but not denying that the Officers are state actors). Indeed, in this Circuit, police officers are considered state actors. *Fought v. City of Wilkes-Barre, Pa*, 466 F. Supp. 3d 477, 491 (M.D. Pa. 2020) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)) (finding that City of Wilkes-Barre police officers were state actors because they "were clearly invested with the power and authority of the state."). Accordingly, having determined that the Officers are state actors, the Court will turn to whether they violated a constitutional right.

B.   **Mr. Nahas has Failed to Plead a Substantive Due Process Violation Against the Officers in Their Individual Capacities.**

Mr. Nahas alleges that the Officers violated Ms. McCoy's substantive due process rights based on a state-created danger theory of liability. ECF No. 1 ¶¶ 63–86. Under this theory, Mr. Nahas claims that the Officers placed Ms. McCoy in a dangerous situation when they left her alone and intoxicated in the middle of the night in a busy intersection. *Id.* The Officers respond that Mr. Nahas has failed to state such a claim because the Officers' actions do not shock the conscience nor did the Officers affirmatively worsen Ms. McCoy's situation. ECF No. 24 at 8–16.

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). Here, Mr. Nahas proceeds under a state-created danger theory of liability, arguing that the particular interest at issue is the right to be free from a state-created danger. ECF No. 1 ¶¶ 64–86. To adequately state such a claim, a plaintiff must allege that:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996).[3] Here, the Officers primarily focus their argument on the second and fourth elements, asserting that Mr. Nahas has not pled that the Officers

---

[3] The level of a state actor's culpability for the second element "falls along a spectrum dictated by the circumstances of each case [and] depending on how much time a police officer has to make a decision." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018). Here, because the Officers "had at least some time to deliberate" before deciding whether to detain or release Ms. McCoy, Mr. Nahas must plead "a conscious disregard of a great risk of serious harm." *Id.* at 718. The parties further appear to agree that this is the correct standard to apply in this case. ECF No. 22 at 11 (agreeing that while the Officers "did not have to make rapid-fire instantaneous decisions on the scene like in a high-speed chase, they were in a pressurized situation" warranting the "conscious disregard" standard); ECF No. 32 at 8 (explaining that the Officers' actions "did not require making a split-second decision under pressure but rather were taken following some deliberation").

6

willfully disregarded Ms. McCoy's safety or that they affirmatively worsened her situation. *See generally* ECF No. 24. And while Mr. Nahas has sufficiently alleged the first and third elements, and arguably established the second, he has failed to adequately plead the fourth element. Under this prong, "an officer is only liable if the officer's acts or omissions increased the risk of injury beyond what it would have been had the officer not intervened at all." *Wyatt v. Krzysiak*, 82 F. Supp. 2d 250, 258 (D. Del. 1999). "[T]he key to this [fourth element] is showing some sort of action [by the state actors], as inaction alone is not sufficient to establish a state-created danger claim." *Martorano v. City of Phila.*, No. 09-3998, 2009 WL 3353089, at *4 (E.D. Pa. Oct. 14, 2009); *see also Kneipp*, 95 F.3d at 1210 (finding sufficient evidence in the record to show that the fourth element was met where the "affirmative acts of the police officers . . . created a dangerous situation").

Here, the Court finds that Mr. Nahas has failed to adequately plead the fourth element because the Officers did not affirmatively increase the risk of harm to Ms. McCoy. Courts have recognized that "[m]any state-created danger cases are tragic and unsettling and this matter is no exception. But the Due Process Clause of the Fourteenth Amendment 'does not transform every tort committed by a state actor into a constitutional violation.'" *Johnson v. City of Phila.*, 975 F.3d 394, 400 (3d Cir. 2020) (Matey, J., concurring). While Ms. McCoy's death is both "tragic and unsettling," the Officers' decision to leave her in the intersection did not increase the risk of harm to Ms. McCoy as they left her in the same position as she was in originally. *See* ECF No. 1; *Wyatt*, 82 F. Supp. 2d at 259–60 (finding that police officer did not worsen plaintiff's situation when she continued to drive drunk after a traffic stop because "[a]t worse, [the officer] left [plaintiff] in the same position as she would have been in had he not intervened at all . . . . because she had already been driving while under the influence of alcohol [and would continue to drive]"). Moreover,

while the Complaint alleges that the Officers increased the danger to Ms. McCoy by failing to ensure that she arrived home safely, ECF No. 1 ¶¶ 78–80, a failure to act is not sufficient to establish § 1983 liability. *See Johnson*, 975 F.3d at 401 ("[The U.S. Court of Appeals for the Third Circuit has] repeatedly held that an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim.").

Furthermore, Mr. Nahas points to several affirmative acts by the Officers that he alleges are sufficient to hold them liable, but he fails to adequately plead that such acts increased the risk of harm to Ms. McCoy or placed her in a worse situation. For example, he alleges that the Officers' arrest of Ms. Crawford-Creighton "created a danger and increased the risk that Ms. McCoy might be injured." ECF No. 1 ¶ 79. The Complaint does not allege, however, that Ms. Crawford-Creighton could have protected Ms. McCoy and could have safely escorted her home as Ms. Crawford-Creighton herself was intoxicated, drove under the influence, and crashed the vehicle. *Cf. Kneipp*, 95 F.3d at 1210 (finding that officers increased the danger to plaintiff by cutting off her "private source of protection" when they allowed plaintiff's husband—who had been escorting plaintiff home—to leave but then the officers left plaintiff to walk home by herself in a visibly intoxicated state). Similarly, the Complaint alleges that the Officers' act of impounding the vehicle "rendered [Ms. McCoy] more vulnerable to danger." ECF No. 1 ¶ 78. The Complaint, however, does not allege that Ms. McCoy was safer with the vehicle; instead, it states that the vehicle was already inoperable by the point the Officers arrived and Ms. McCoy herself was intoxicated and thus unable to safely operate the vehicle. *See Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (finding police increased risk of danger to a car passenger when they arrested the car's intoxicated driver, impounded the car, and left the sober passenger alone in a high crime neighborhood); *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993) (finding police officer

increased danger to drunk car passenger when he arrested the sober driver but left behind the passenger, who he knew was drunk, with the keys to the car). Therefore, the Court finds that because the Complaint fails to allege an affirmative act by the Officers that increased the risk of danger to Ms. McCoy, Mr. Nahas has failed to state a claim for a substantive due process violation.

      **C.    The Court Will Dismiss the Claims in Count 1 against the Officers in their Official Capacities.**

In Count 1, Mr. Nahas brings claims against the Officers in their official capacities.[4] ECF No. 1. Official-capacity claims against state actors "essentially are claims against the [government entity] itself, [and] they are subject to the same *Monell* standard for institutional liability." *Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at *3 n.4 (3d Cir. June 7, 2024) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Under *Monell*, a local government "can be held liable [for constitutional violations] when the 'execution of a government's policy or custom . . . inflicts the injury.'" *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell*, 436 U.S. at 694). A municipality may also be held liable under *Monell* for the failure to train its employees where a plaintiff shows that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Johnson*, 975 F.3d at 403.

Here, Mr. Nahas has not alleged that the City of Pittsburgh had a policy or custom that caused the purported constitutional violations nor that it failed to properly train the Officers. *See generally* ECF No. 1. Therefore, he has failed to state a *Monell* claim. *Young v. City of Chester*, 764 F. App'x 262, 265 (3d Cir. 2019) ("[The complaint must] satisfy the 'rigorous standards of culpability and causation' required for municipal liability."). Furthermore, the parties have agreed

---

[4] The parties do not address these official-capacity claims in their briefing. *See generally* ECF Nos. 23, 24, 32, 35.

to dismiss the *Monell* claims against the City of Pittsburgh, ECF No. 27, and therefore, the claims against the Officers in their official capacity also fail. *Kane v. Chester Cnty.*, 811 F. App'x 65, 72 n.7 (3d Cir. 2020) ("Because [plaintiff's] *Monell* claim fails, his official capacity claims do too.").

Accordingly, the Court will dismiss the official-capacity claims in Count I against the Officers. The dismissal, however, will be without prejudice and with leave to amend. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) ("[W]hen an individual has filed a complaint under § 1983 which is dissmissable [sic] for lack of factual specificity, he should be given a reasonable opportunity to cure the defect…"); *see also* ECF No. 27 (dismissing *Monell* claims against the City of Pittsburgh without prejudice).

### D.     The Officers Are Entitled to Qualified Immunity on the Claims Against Them in Their Individual Capacities.

The Officers argue that even if the Court were to find that the Complaint adequately alleges a constitutional violation, they are entitled to qualified immunity because the right at issue in this case—i.e., the right to be forced into police custody—is not clearly established. ECF No. 24 at 16–18. Mr. Nahas responds that the Officers are not entitled to qualified immunity because Ms. McCoy's right to be free from a state-created danger was clearly established at the time of her death. ECF No. 32 at 10–13.

At the motion-to-dismiss stage, government officials are entitled to qualified immunity unless (1) facts, taken in light most favorable to the plaintiff, show a constitutional violation, and (2) the constitutional right was clearly established at the time of the violation. *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023). Courts may address these two prongs in any order. *Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021). Here, the Court has already found that Mr. Nahas failed to state a constitutional violation, *see* Part III.B, but even if he had adequately alleged

10

such a violation, the Court finds that the constitutional right was not clearly established at the time of the violation.

Courts have interpreted "clearly established" to mean that officers "are on notice their conduct is unlawful" prior to bringing a lawsuit against them. *Thomas*, 88 F.4th at 283. For a right to be "clearly established," it "must be so apparent that 'every reasonable official would understand that what he is doing is unlawful.'" *Hira Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190 (3d Cir. 2021) (quoting *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020)). Furthermore, "the right must be defined with a 'high "degree of specificity"' before [courts] consider that right clearly established." *Id.* at 190–91 (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)). Thus, "[t]he legal principle established in a precedential case must 'clearly prohibit the offic[ial's] conduct in the particular circumstances before him.'" *Id*. at 191 (quoting *Wesby*, 583 U.S. at 49). "Defining a right at the appropriate level of specificity is often the most critical aspect of a qualified immunity analysis." *Sauers v.* 905 F.3d at 716.

Here, Mr. Nahas appears to define the specific right as the "right to be free from a state-created danger." ECF No. 32 at 10. Meanwhile, the Officers define the specific right at issue as "the right to be forced into police custody in order to make sure an individual gets home." ECF No. 24 at 16. Mr. Nahas's definition of the right at issue is too general because it does not account for the particular facts of the case at hand. *Kisela v. Hughes*, 584 U.S. 100, (2018) ("[The U.S. Supreme Court] has repeatedly told courts . . . not to define clearly established law at a high level of generality.") (internal quotations omitted). Furthermore, the Court finds that the Officers' definition, while more specific, also does not fully account for the context or specific facts of this case: namely, that the Officers failed to ensure that Ms. McCoy arrived at a safe location when they left her alone and intoxicated in the middle of a busy intersection at night. *See Sauers*, 905

11

F.3d at 717 (explaining that while the complaint "relies on the clearly established state-created danger theory of liability, [t]he particular factual allegations, meanwhile, involve a police pursuit of a non-fleeing summary traffic offender."). Therefore, the Court finds that the specific right at issue is the right to be free of the risk associated with being left by police officers alone and intoxicated in a busy intersection at night.

After defining this right, the Court must then determine whether it is clearly established. *See Sauers*, 905 F.3d at 719 ("[W]e must ask whether Supreme Court precedent, [Third Circuit] precedent, or a consensus of authority among the courts of appeals placed that right beyond debate."). Here, the Court finds that such a right is not clearly established. The right at issue centers on the Officers' failure to transport Ms. McCoy to a safe location. In Third Circuit precedent, however, officers cannot be held liable under a state-created danger theory of liability for an omission or the failure to act. *Johnson*, 975 F.3d at 401 ("[The U.S. Court of Appeals for the Third Circuit has] repeatedly held that an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim."). And although the Complaint attempts to frame the Officers' failure to transport Ms. McCoy home as an affirmative act, "[t]he Third Circuit rejects 'attempts to redefine clearly passive inaction as affirmative acts.'" *Hall v. Ligonier Valley Police Dep't*, No. 22-1165, 2025 WL 563813, at *10 (W.D. Pa. Feb. 20, 2025) (Fischer, J.) (citing *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013)). Therefore, because the right at issue here involves the Officers' failure to act, and because it is not clearly established that government officials can be held liable for omissions under a state-created danger theory of liability, the Officers are entitled to qualified immunity.

Accordingly, the Court will dismiss the individual capacity claims in Count 1. And because the right at issue was not clearly established at the time of the alleged violation, any

amendment would be futile. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (explaining that when dismissing a claim pursuant to Rule 12(b)(6), "a district court must permit a curative amendment, unless an amendment would be inequitable or futile."). Therefore, the claims against the Officers in their individual capacities[5] in Count 1 will be dismissed with prejudice.

### IV. The Court Will Dismiss Mr. Nahas's Remaining State-Law Claims.

Mr. Nahas's remaining claims arise under state law, including his wrongful death claim (Count 3), a negligent infliction of emotional distress claim (Count 4), a claim under the Pennsylvania Dram Shop Act, 47 P.S. § 4-493(1) (Count 5), a survival action claim under 42 Pa C.S. § 8302 and 20 Pa C.S. § 3371 (Count 6), and a negligence claim (Count 7). ECF No. 1. Because all the remaining claims in this case arise under state law, and the only federal claim will be dismissed, the Court declines to exercise supplemental jurisdiction and will dismiss without prejudice the state-law claims.

### V. Conclusion

For the forgoing reasons, the Officers' Motion to Dismiss, ECF No. 23, is GRANTED such that the individual capacity claims in Count 1 are DISMISSED WITH PREJUDICE, the official-capacity claims against the Officers in Count 1 are DISMISSED WITHOUT PREJUDICE, and the remaining state-law claims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the Tavern's Motion to Dismiss, ECF No. 21, is DENIED as moot.

---

[5] "Qualified immunity from suit under § 1983 does not extend to municipal defendants or government employees sued in their official capacity." *Mouzone v. Ahllert*, No. 22-2885, 2024 WL 1299974, *3 n.3 (3d Cir. Mar. 27, 2024) (citing *Owen v. City of Independence*, 445 U.S. 622, 650 (1980)).

IT IS FURTHER ORDERED that Mr. Nahas is granted leave to amend only the official-capacity claims in Count 1. His amended complaint, if any, is due on or before August 1, 2025. If no amended complaint is timely filed, the dismissals without prejudice will be converted to dismissals with prejudice without any further action by the Court.

DATED this 18th day of July, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record